Smith v. Brazelton. decided by the supreme court of Tennessee [1 Heisk. 44], is supposed by counsel to assert a contrary doctrine. We do not stop to reconsider that case. It was before us in Riddle v. Pillow [unreported]. We then said the question was one depending upon the constitution and laws of the United States, and in reference to which the rulings in the federal courts were mandatory; and, although we very confidently disapproved what we deemed its manifest errors in according to the Confederate government equally belligerent rights, we took pains to say no judgment was passed upon the peculiar facts in contest in that case; we said "hostilities existed and armies were on the march; the general commanding took what he did to warm and shelter his soldiers;" and, without deciding whether physical necessity, and to prevent suffering and want would constitute. in any possible case, a justification for the forcible appropriation of property. we denied then. as we do now, that it would derive the slightest additional support from the immaterial accident that the claim to do so was predicated upon any pretended authority derived from a rebel government. In reference to a question about which there is not a conflict in tribunals whose judgment we have any right to regard, it is unnecessary to follow the frequent repetitions which have applied it in so many different exigencies. All, without exception, say the Confederate government could make no law. Its prescriptions imposed no obligations, political or moral, and the only justification for obedience which the citizen could make to his rightful sovereign was deadly coercion by violence or threats. No such proof appears upon this record. The charge which informed a jury that a mere law, without more, was an excuse for obeying it, was erroneous.

The judgment is reversed. and a venire de novo will issue, returnable to this court.

---

## Case No. 15,959.

UNITED STATES v. ONE THOUSAND FOUR HUNDRED AND SIX BOXES OF SUGAR.[1]

District Court, S. D. New York. Feb. 25, 1862.

CUSTOMS DUTIES—CLASSIFICATION OF SUGARS.

This was an action brought to forfeit the sugar for alleged violation of the revenue laws. The sugar was shipped in Havana, by Sama Sotolongo & Co., consigned to L. Van Horn & Co., by the ship Kerelan, and arrived here December 23, 1861. In the invoice all the sugars, except 14 boxes, were

[1] [Not previously reported.]

described as Quebrado sugars. The 14 boxes were described as Cucuruchos. Van Horn & Co., the claimant, entered all the sugars, using this invoice; and in the entry they described all the sugars as raw sugars, and paid duty thereon, at the rate of two cents a pound. By the then existing tariff, of August 5, 1861, § 1 [12 Stat. 292]. a duty was imposed "on raw sugar, commonly called 'Muscovado' or brown sugars. and on sugar not advanced above No. 12, Dutch standard, by clarifying or other processes, and not yet refined, 2½ cts. a lb." The sugars were examined at the custom house. and on examination, it was reported to the collector, that all of them, except the fourteen boxes, were advanced by boiling, clarifying. or other processes, above No. 12 Dutch standard. The sugars were accordingly seized, and the information in this case filed against them. under the 67th sections of the act of 1799 [1 Stat. 677]. and the 4th section of the act of 1830 [4 Stat. 410]. The counts under the act of 1799 alleged the forfeiture of the goods. by reason of false description in the entry. and the counts under the act of 1830 alleged that the invoice was made up. with the intent to evade the payment of duties by calling the sugar "Quebrado" sugar, when it was not such.

The testimony for the government, given mainly by sugar refiners, tended to show that there were four lots of the sugars, and that three of them. amounting to about 1,100 boxes, were partially refined, and belonged to the three highest of the four grades into which sugars are distinguished. That the term "Quebrado," is applied to sugars between the grades of No. 10 and Nos. 12 & 14. Dutch standard, and that all these sugars were above No. 12, except the 14 boxes. It also appeared that these sugars were made by what is known as the "De Rosue" process, by which the sugar is clarified, as it is made from the cane. and that the mode was similar to that of refining sugars here. Merchants were called to testify for the claimants, and their testimony tended to show that in Cuba. as well as in New York. all sugars were known as "raw" sugars, except sugars manufactured from sugar, and that no sugars, known in commerce as "refined" sugars were ever imported from Cuba; and that the term "Quebrado" applied to all grades of sugar from No. 10 to No. 20, Dutch standard, and that none of these sugars were above No. 20.

Webster & Craig. for the United States. Mr. Evarts, for claimants.

The jury (BETTS, District Judge) brought in a sealed verdict for the claimants, releasing the goods.